Tilghman C. J.
The Judge of the District Court, in which this cause was tried, left it to the jury to decide, whether the defendant had ratified the act of the plaintiff in guaranteeing the last note, on payment of $215, and obtaining a new indorser; and gave them his opinion, that in case they should think the plaintiff’s proceedings had been ratified, he might recover in this action. We are not now considering a special verdict. No facts are found, and the only question is, whether the Judge erred in law, in his charge to the jury. In order to determine the correctness of the opinion, that the plaintiff was entitled to a recovery, in case his acts were ratified by the defendant, we must suppose that his acts were ratified.
Then applying the maxim, “that the ratification of any act is, in law, equivalent to a command or request to do that act,” and the case will stand thus: — The defendant being responsible for the payment of the note which fell due soon after he left town, the plaintiff at his request had that note withdrawn from bank, and made himself responsible for the last note, which he afterwards paid, not voluntarily,/but because he was bound to pay it. Can this be considered as money paid for the use of the defendant ? I think it may. It is not unlike the case of a surety, who, having paid the debt, may recover against his principal, in a general action of indebitatus assumpsit, on an implied promise. No man, by a voluntary payment, can make himself the creditor of another and recover against him. But where he pays a debt, for which he has become responsible, at the request of another, the law implies an assumption. But, it is objected, that the defendant having warned the plaintiff, that he would have nothing to do with any note which should be given after he left town, he thereby became discharged from all responsibility for the last note, and any promise made afterwards was nudum pactum. Therefore, it is said, the Judge was wrong in submitting to the jury the fact of the defendant’s having ratified the act of the plaintiff. It is very true, that a promise made without consideration, is void. But can it be said, that there. *9 Was no consideration for an engagement by the defendant to ratify the act of the plaintiff? If the note for which the defendant was responsible, had not been withdrawn from bank, he might perhaps have lost the whole by Orth's insolvency. Whereas, by withdrawing it, he secured payment of part and obtained the chance of benefit from a new indorser. Perhaps, indeed, if the note had not been withdrawn, the whole might have been paid by Orth. It is a doubtful matter; but when the defendant approved the conduct of the plaintiff, it may be presumed, that he was conscious of having received a benefit. It would be hard in such case to presume, that he received no benefit, and if he received any benefit, it is not nudum pactum. Concerning the merits of this case, I never had any doubt. A man, who, in the defendant’s situation, made a promise of payment, certainly ought to pay. But I had doubts concerning the form of action. Upon reflection, however, I am satisfied. Where one man, at the request of another, becomes responsible to a third person for the payment of money, he may, upon making payment, recover against the person who requested him, as for money paid for fiis use; and that too, although the person making the request be not benefitted by the payment. In Harris v. Huntbach., 1 Burr. 373. the defendant, Huntbach, requested the plaintiff to pay a sum of money to some labourers who were working in the garden of another person. And it was held, •that the plaintiff might recover, as for money paid for the use of the defendant. The case befor'e us has been perplexed by considering it as a promise made by the defendant to Eberth, to pay the last note. It will be simplified, by considering it in the view in which it was submitted by the Judge to the jury; that is to say, by considering what was said by the defendant to Eberth, as evidence of his assent to the act of the plaintiff, in withdrawing one note and becoming responsible for the other. And of this it was powerful evidence, for why should the defendant say, that he would pay the note unless he approved of the plaintiff’s conduct? Upon the whole, I perceive no error in the Judge’s charge, and am, therefore, of opinion, that the judgment should be affirmed.
Gibson J.
The material facts are simply these: Hassinger, the defendant below, being the holder of Henry Orth's note, paid it away to Joseph Eberth, for carpenter’s work, *10 who passed it to his brother Conrad Eberth, and received the amount in cash. When it became due, it was renewed by a note drawn by the firm of Orth and Kean, at sixty days, and guaranteed, though not indorsed by Hassinger. When this second note became due, it was renewed and guaranteed as before, for sixty days longer. When the third became due, application was again made to Hassinger, but wishing to disengage himself, he refused to continue his responsibility, alleging he had bound himself by an oath not to guarantee another note. However, being pressed, he consented to indemnify the plaintiff Solms, if he would guarantee the note proposed. Solms agreed to do so; and on this footing matters were arranged. Just before this fourth note became due, Hassinger told Solms he was going out of town to avoid importunity on the subject, and desired him, if it were not paid, to let it be protested, but on no account to have it renewed, and if it were renewed, it would be at the risk of Eberth and Solms, for he, (Hassinger) would have nothing more to do with it. Notwithstanding this, the note was withdrawn from bank, where it had been deposited for collection, and 215 dollars being paid, a new note with an additional indorser was given, Solms again warranting the payment. Hassinger returned to town, and in conversation with Conrad Eberth, being informed of what had been done, said “ never mind, I will pay it.” Being told of the additional indorser, he said “ he is as good as the bank, I will warrant the payment.” Solms was ultimately compelled to pay the note.
On this statement of facts, .1 do not see how it is possible for the plaintiff to recover. The Judge who tried the cause, left it to the jury to consider Solms as the agent of Hassinger, and entitled to recover for a loss sustained in the course of his agency; and that though the loss arose from an act done contrary to the express instructions of his principal, yet as the act was in fact beneficial to the principal, who after-wards ratified it, there was a good consideration for an assumpsit, and the jury might presume the act to have been done at the instance and request of the principal. From this opinion, I entirely dissent. There is nothing in the evidence to shew that Solms warranted the note as the agent of Has-singer. Whether the facts given in evidence were true, was for the consideration of the jury; but whether the evidence, *11 if true, shewed that the parties stood in the relation of principal and agent, was a question of law. There is nothing in the evidence, from which an agency can be inferred. Solms did not contract as an agent, for he rendered himself personally liable; he did not pretend, nor was it understood he had any authority to bind Massinger, who was not to be looked to by Eberth, in any event. Solms at first entered into an engagement at the request of Massinger, and under a promise of indemnity, it is true, but that is a very different thing from doing the business as the agent of the latter. Thus stood matters at the first transaction, between Massinger and Solms. Nor can the previous existence of the relation of principal and agent be inferred from Massinger having after-wards instructed Solms not to permit the note to be renewed. This was in fact not an instruction to an agent, but a declaration that he would not, in the event of a renewal, continue his engagement of indemnity. But if Solms had been an agent in the first instance, he was so only pro hac vice, and it does not follow, that he was an agent when he last guaranteed the note. It cannot be pretended he acted by authority; for all previous authority, if any existed, had been withdrawn ¡ and there certainly was no general authority. Where there is a general authority, or perhaps a limited one to do one act, or transact one piece of business, and the agent transcends his powers, the principal may ratify the act as between him and the person with whom the agent contracted; for such ratification amounts to a new agreement by the principal, which if he please, he may well make without the intervention of an agent. But as between the principal and agent, the matter stands on different ground. The agent in such case, has no claim either to indemnity or compensation, and even an express promise to that effect, would be nudum pactum. Here there was no moral obligation resting on Massinger, to indemnify Solms. It is said, that procuring payment of a part of the former note, and a new indorser, was a substantial benefit; but Massinger was the best judge of that; and it might have been otherwise, for Orth and Kean might perhaps have raised the money, rather than suffer their note to be protested. But be that as it may, every man has a right to manage his own affairs in his own way, and no one has a right to interfere and make him responsible for a supposed benefit imposed against his wishes. Then there being *12 no moral obligation, .even an express promise from Hassinger to Solms, would have been nudum pactum. There was, how* ever, no express promise. The renewing of the note with So ¿ms’s guarantee, was a transaction, to which Hassinger’s former promise of indemnity did not extend; and his promise to Conrad Eberth, cannot be considered as enuring to the benefit of Solms. It never was so intended. To Eberth, the defendant promised to pay the note; but a promise to indemnify Solms, wouid have been collateral to payment. There might have been, and in fact was, good reason to distinguish between the Eberths and Solms; the loss in the end might have rested on the former, and Hassinger was bound in conscience to keep them clear, as he passed to them, in. payment of a fair debt, the original note, which was received as matter of favour to him. But with regard to Solms, who acted in direct opposition to his wishes, and therefore took the whole responsibility on his own shoulders, the case was quite different; he renewed his guarantee not only without the request of the defendant, but against his express declarations that he did not wish him to do so, and that if he did, it would be at his peril. There was therefore no express promise to Solms; there was a promise to Eberth, and if the question were between him and the defendant, the consideration might possibly be deemed sufficient. A moral obligation is a good consideration for an express promise, although it is not sufficient to raise an assumpsit by implication of law; but, as between the plaintiff and defendant, there was neither express promise, nor moral obligation. There is nothing in the transaction, to raise a promise from the relation in which 'the parties stood ; principal and agent is out of the question; engagement to Solms, there was none; and his having acted in direct opposition to the request of Hassinger, absolves the latter from all obligation, moral or honorary. But the substantial objection is, the Judge left to the jury, to presume from the promise to Eberth, and against clear evidence to the contrary, that Solms acted in pursuance of the instructions, and at the request of Hassinger. This was left to the jury, as a legal presumption; for no one will pretend an admission of the actual fact in any wise followed, from the conversation with Eberth. But if "the matter were left as a presumption of fact, the charge was still wrong; for though a jury may draw any conclusion, that in their judg-, *13 ment the evidence will warrant, yet they are not at liberty to presume the existence of a fact, without any evidence, or contrary to what their judgment informs them, is the truth of the case ; and to instruct them they may do so, is, I apprehend, error. But no legal presumption arose. If, in this case, an authority and precedent request can be implied, it may be so in every instance, where, in the estimation of the jury, the act is beneficial 5 and this would render the necessity of a precedent request merely nominal, which is a substantial part of the plaintiff’s case, that must be proved. Hayes v. Warren, 2 Stra. 933. What is there here to distinguish the case ? Barely the promise to pay Eberth. Now granting the renewal of the note was in fact beneficial, yet the plaintiff could not support an action directly, on even a promise to indemnify him, if made not to himself, but to Eberth; it will follow pretty clear, he can derive no benefit in a collateral way, from any promise to Eberth. That he could not sustain an action, is settled. No one can maintain assumpsit, on an agreement to which he is not a party. Jordan v. Jordan, Cro. Eliz. 369. The rule however, has been softened, ivhere the consideration is a provision for a child, but in no other case. Dutton v. Poole, 1 Vent. 318. Rookwood’s case, Cro. Eliz. 163. Bourne v. Mason, 1 Vent. 6; as where the defendant’s father, who was also father to the plaintiff’s wife, was about to cut down 1000/. worth of timber, as a portion for her; whereupon defendant promised his father, that he would pay the 1000/., if his father would not fell the timber. Held on motion, this was a sort of debt due the daughter, and a provision, and that she could maintain an assumpsit, though a mere stranger could not. A stronger case was cited, where a physician was promised money for himself, and also for his daughter, if he would perform a certain cure; it was held, the near relationship gave the daughter the benefit of the consideration performed by her father, and that she might maintain assumpsit. Upon the same ground, the promise must be made to the plaintiff himself, for general declarations are not sufficient, 1 Roll. Abr. 6; as where in a discourse between the father of A. and B., touching a marriage between the daughter of B. and A.; B. said, he would give 100/. to whoever would marry his daughter with his consent; A. did marry her with his consent, and brought assumpsit; held, these declarations did not amount to a promise to the *14 plaintiff himself, and therefore gave no right of action. This was before the statute of frauds, which, in England, renders such a promise void, on another ground. I mention these cases, to shew that a stranger to the consideration, or to the promise, can derive no benefit from it. Soims, was a stranger not only to the promise to Eberth, but also to the consideration, which was a personal obligation to Eberth; and if he could not maintain a suit, directly founded on it, I am at a loss to know, how he can make it indirectly the foundation of an action. There is no special assumpsit laid in the declaration, and this suit is not pretended to be founded on any express promise to either Eberth or Soims, but on an implied promise, in consideration of an act done at the request of the defendant; and a promise to a third person not importing any acknowledgment of a request, is left to the jury as raising a legal presumption, or as evidence sufficient to justify them in implying an actual request, and this too, in direct contradiction to the acknowledged truth of the fact. This is to give indirectly and by a fiction, an action to a person, not a party to the promise, and in this instance, a stranger to the consideration; and to this I object, as error. The Judge who tried the cause seems to have been strongly impressed with the natural equity of the plaintiff’s demand; in a court of error, however, that cannot enter into the consideration of a Judge, without extreme danger of the established principles of law being thereby warped; and therefore, if I even concurred in the existence of any claim on the defendant’s honour or conscience, I should refuse it any operation, in discussing the abstract principles of law. I am of opinion, the judgment ought to be reversed.
Duncan J.
The charge of the Court is objected to, on four different grounds:
1st. There was no consideration for the subsequent promise.
2d. That it was not made to the plaintiff, and therefore he could support no action.
3d. That the fact of agency was not left to the jury, and that the Court erred in the effect given to the declarations of Hassinger, they not amounting in law, to a ratification of the promise on the renewal of Solms,
4th. To the form of action.
*15 The statement of the evidence furnishes abundant matter to shew, that Hassinger was under an equitable obligation to pay. Hassinger was originally liable. The note, as passed to Eberth, was his act; he promised to be responsible when he passed it to Eberth When it fell due, it was renewed. It was then known that Orth, if not insolvent, was in very doubtful circumstances. The renewed note was not indorsed by Hassinger; but he guaranteed the payment. Upon the third note falling due, Orth called to have his guarantee renewed ; but Hassinger, instead of renewing it himself, applied to Solms, declaring to him, that he had sworn not to give a fourth guarantee, but requested the plaintiff to guarantee it, and he would indemnify him. This Solms, on his request, did. When this was about coming due, Hassinger fearing the importunity of Orth, went out of town to avoid it; instructed Solms not to have it renewed, but let it be protested; that if renewed, he would have nothing to do with it. When it fell due, it was withdrawn from the bank, 215 dollars being paid, and anew note from Orth to Eberth, with John Cook indorser, and Solms’s guarantee. Hassinger, when he returned to the city, and was informed of what had been done, said he would pay the note which had been renewed. Solms has paid the note; Orth and Cook having become insolvent.
This would be considered as between Solms and Hassinger, as the original debt of Hassinger; and there then would be more than an equitable consideration for the subsequent promise. But if the consideration was barely equitable; and I think there can be no doubt, but that Hassinger, having introduced Solms into the business, if Hassinger was satisfied that Solms had done.the best he could for his interest; that the debt had been diminished 215 dollars; another name had been added for his security, as good as the bank, • as Hassinger expressed himself; that this promise, was only to do, what an honest man ought to; the ties of conscience on an upright man, are a sufficient consideration; and though no court of law or equity could have enforced the payment, yet this affords a sufficient consideration, if not to raise an implied assumpsit, to support an express promise. Cowp. 290. 5 Binn. 33. 3 Hen. & Munf. 184.
However this doctrine may have been shaken, by subsesequent decisions in England, I consider it as adopted in *16 Pennsylvania, to the extent of such consideration supporting an express promise. Hassinger, previous to the subsequent promise, had received a benefit; the consideration was originally beneficial to him, and this surely was a sufficient consideration. Hassinger in all fairness, on his return, if he intended not to be further bound, should have said so ; 'instead of which, he renews his original guarantee ; takes the note, finally on himself; throws Solms off his guard, by assuming responsibility; placing Solms precisely in the state he stood on his first guarantee'. This renovation of the original promise, may be aptly compared to the case of a negotiable promissory note, where no demand has been made on the drawer. Though the indorser' is discharged, and though the law be, that if he afterwards promise, it is nudum pactum ; yet if, with full knowledge that no demand had been made on the promisor, he undertakes to pay, such promise is binding. Hopkins v. Liswell, 12 Mass. 52. Here the promise could not be founded either in mistake of the law, or the fact. He must know how far he intended to be bound by his original promise ; how far he was absolved from that promise, by the renewal of the note against his instructions; and with full knowledge of the whole, he waives the instructions j dispenses with the order he had given Solms; ratifies the act of his agent; renovates the original promise.
But it is said, the subsequent promise was made, not to Solms, but to Eberth. Eberth was not a mere stranger, but the party ultimately to be benefited by Hassinger, through the medium of Solms’s guarantee. It was not a mere speech in discourse with a stranger; but a solemn renewal of his guarantee, made in the name of a party in interest. This promise, thus made to Eberth, being for the benefit of Solms, he may maintain an action on it. For the law seems well settled now, whatever contradiction may be in the more ancient cases, that if one person makes a promise to another, for the benefit of a third, that third may maintain an action on it. But the declaration of Hassinger to Eberth, may bff considered as a confession of his liability to Solms ; a declaration of a fact. The fact of the original agency cannot be doubted; that Solms came into the guarantee, as the agent of Hassinger, and for the purpose of getting Hassinger’s name off the paper; and it was a fact submitted to the jury to say, whether the subsequent declarations of Hassinger. did not sane *17 tion the act of Solms in taking part, and procuring a renewal of the note for the residue, with an indorser, supposed to be sufficient for the balance. Now the jury might infer, from the conversation between Hassinger and Eberth, that Has-singer did adopt Solms’s act; and there could be no other reason for his declaration to Eberth, that he would see that note paid. If he did adopt, and the jury have found he did, his subsequent assent would be equivalent to an original authority; and the acts of the principal are to be construed liberally, in favour of the adoption of the acts of the agent, and may be made out, not by express terms of ratification, but circumstances proving an assent, approbation, and acting as if adopted ; as here by declaring he would pay the renewed note.
As to the form of action, this was not a collateral promise, but an undertaking. Do you stand in my shoes, as to this guarantee, and if you are obliged to pay the debt, I will pay you. It is the money paid at his request. You are to be the ostensible man, I am to be kept out of view ; but if you are called on to pay the. note, I will afford the means, and repay you, what you are thus obliged to pay.
If Hassinger had paid the note for Orth, Hassinger could have supported this general count against Orth. Solms has been obliged to pay it for Hassinger; it is then, money paid at the request of Hassinger, and for his use. There was a moral obligation on Hassinger to pay the note renewed ; and with full knowledge he assumes to pay it. This promise would extend to the benefit of Solms. If Solms had intruded himself into the transaction, and had of his own accord paid the debt of Hassinger, made Hassinger his debtor against his will, he could not support this action. But as at the request of Hassinger, he made himself liable to pay a debt for which Hassinger was bound, and as he was called on and did pay, the previous request by Hassinger to Solms to stand in his place, and his subsequent promise to pay the note; this previous request on which Solms thus agreed to stand in his place, would run through the whole transaction; and all things done by Solms which he bound himself to perform, as here to pay the note, all things necessarily incident to the situation in which Solms was placed at the request of Hassinger, would, in contemplation of law, be considered as done at his request, and consequently that the pavment *18 was at the request of Hassinger. To Eberth holding the note, Hassinger says, I will pay the note guaranteed by Solms.. This being for the benefit of Solms would exactly stand as a promise made to him, it being for his benefit. He does not pay. Solms in consequence of the previous request of Hassinger is bound to pay. Hence, it seems a natural construction, that the money paid to Eberth was at the request of Hassinger. The whole must be considered as one transaction; and from the time Solms became a party to it, there was a privity of law between Eberth and Solms, and between Solms and Hassinger, when Hassinger promised to pay the note. It is for these reasons I am of opinion, connecting the whole transaction, uniting its several parts, that Solms did all that he did at the request of Hassinger; that the renewed guarantee, by the adoption of Hassinger, was, as if he had requested it to have been done ; that when it was done, he promised to pay the note to the holder; that Solms, having been bound at his request to pay that very note, and having paid it, it will be considered as if paid at his request.
Where an agent pays money for which he had rendered himself liable for the principal, within the scope of his authority, an action for money paid and laid out, will lie against the principal.. But the rule I consider as a general one, that where one at the request of another has rendered himself liable to pay the debt of that other, and has paid it, this action will lie.
Where one gives bond for another, at his instance and pays it, this action will lie, unless he has taken a security of a higher nature for his indemnity; and it is on this principle, all the doctrine of contribution rests. If the party is sued, he may have an action on the promise of indemnity, before he has paid the money, for he is damnified by the suit; but if he has paid the money, he may recover it in this form of action.
Where one guaranteed the payment of goods to be furnished, for which he was obliged to pay, he recovered in an action for money lent and advanced, and money paid to the use of the defendants', without objection to the form of declaration. Warrington v. Furbor, 8 East, 242.
The contract on which his cause of action arose being then no longer executory, the objection founded on the stipulation being matter of special contract, does not apply. *19 It cannot form any objection to the form of declaration ; and I think that it is a general practice, where one man has guaranteed the debt of another and paid that debt, to declare as for money paid, &c. On the whole view of this case, it appears to me to be a loan of the name of Solms for the accommodation of Hassinger, and having on that loan paid the money, he is entitled to recover in this form of action.
Judgment affirmed.