## CHARLES BARNEY *et al.* *versus* JESSE COFFIN.

By the shipping articles of a whaling ship the seamen were to have shares of the net proceeds of the oil to be obtained, in lieu of wages. According to the usage of that business, the master supplies the seamen, when abroad, with necessary clothing, and retains from their shares respectively the amount advanced; and this, whether they return in the ship or desert, and whether their shares are or are not assigned. *Held,* that this was a reasonable usage, and that the master, by putting the oil, marked with the ship's mark, on a wharf, whence part of it was taken by the plaintiffs, but afterwards returned, and by delivering it up to a general agent for settling the voyage to be sold, did not part with his lien.

Such seamen, after assigning their shares, forfeited them by desertion, but the ship-owners nevertheless authorized their agents to pay the shares to the assignee, making deductions for the expenses of procuring other seamen; and the agents gave the assignee a written promise, upon which they were afterwards held personally liable to pay him the shares. Whereupon they brought an action of *assumpsit* in their own names against the master, to whom such shares had been paid over by the general agent for settling the voyage, and the action was sustained for the balance after deducting the amount of the master's advances.

THIS was an action of *assumpsit* for money had and received, lent and accommodated, laid out and expended, and on an account annexed to the writ.

The defendant owned one sixteenth part of the ship Vulture, of Nantucket, and was captain of her on a whaling voyage to the Pacific ocean. The ship sailed from Nantucket on the 11th of September, 1819, and returned on the 1st of December, 1822. Charles Barney, one of the plaintiffs, owned one sixteenth part of the ship. The several owners had the same proportional interest in the oil &c. procured, as in the ship. Six men, by the procurement of Peleg S. Folger, shipped as seamen for the voyage and signed the shipping articles, by which they were to receive, in lieu of wages, five of them a hundred-and-fortieth part each, and the sixth a hundred and thirty-ninth part, of the net proceeds of all oil &c. that should be obtained during the voyage, as soon after the return of the ship to Nantucket as the oil &c. could be sold and the voyage made up by the owners. These men received clothing &c. from Folger previous to the commencement of the voyage, and before leaving Nantucket they assigned to him, in writing, all that should be coming to them as mariners on that voyage, and their orders in his favor were accepted by Daniel Barney. Evidence was offered to show that this Barney was agent for the owners.

116

Barney
*v.*
Coffin.

The ship continued at sea nine months longer than was anti-cipated, and in consequence the officers and crew were in great want of clothing. The defendant therefore supplied them, as otherwise the voyage must have been abandoned. Four of the six seamen forfeited their shares or lays by desertion. After the ship's arrival the owners appointed Timothy Hussey agent to settle the voyage. The oil constituting the lays of the six men was put on the wharf at Nantucket in one parcel, and marked with the ship's mark. So much of the residue as belonged to the ship-owners was delivered to them. At a meeting of the owners they passed a vote to pay Folger the lays of the deserters, making certain deductions for charges accruing in consequence of their desertion. The defendant was present at the meeting, objected to the proceedings, and stated that his bills for clothing delivered to the men had not been paid. The plaintiffs were requested by some of the owners to inform Folger of the disposition which they intended to make of the lays. After this meeting the defendant proceeded to take from the wharf into his own custody the oil set apart for the six lays, but was unable to obtain more than 638 gallons of it, as the plaintiffs at the same time took the residue, which was 780 gallons. The plaintiffs delivered to Folger a copy of the vote before mentioned, and an instrument dated the 10th of December, 1822, signed by them as a committee of the owners, in which, in consideration of 20 dollars received of Folger, they agree to deliver and pay over to him the amount of the lays of the six men, he paying his proportion of the expense of procuring other hands on the voyage. There was no evidence that the owners knew that such an instrument would be given by the plaintiffs, and there was evidence on both sides touching the plaintiffs' authority to make the settlement with Folger. Afterwards the owners directed the plaintiffs to deliver to the defendant the 780 gallons of oil, and they did so. In March, 1823, the defendant delivered this oil, together with the 638 gallons, to Hussey, who sold it for the net sum of about 744 dollars, which he paid over to the defendant. Part of this oil constituted the lays of the two men who did not desert. There was no evidence that the defendant had ever been directed by the owners to pay the 744 dollars to the plaintiffs or any other person, and

124

he always claimed to hold the same and the six lays, until his bills for clothing should be paid. No part of the bills was alleged to have been paid or tendered. The plaintiffs did not prove any assignment of the six lays or the proceeds to themselves. No act of the owners disposing of the lays was proved, except the written vote. At the Court of Common Pleas, in May, 1823, at Nantucket, Folger recovered judgment against the plaintiffs on their obligation to him of the 10th of December, 1822 ; and the amount of the judgment was paid by them on the 13th of November, 1823.

The defendant proved by witnesses, who were not contra dicted, that it is usual for captains of vessels on whaling voyages, to provide and deliver clothing to their crews while abroad ; that by reason of the great length of these voyages it is absolutely necessary to do so or to abandon the voyage ; that the captain's bills for such clothing are paid from the lays of the seamen furnished, and this, whether the seamen return in the ship or desert, and whether their lays are or are not assigned, and that the captain has a lien on the lays for the amount of clothing furnished ; and that at the end of the voyage he usually delivers his bills, with the seamen's lays, to the agent for settling the voyage, who sells the lays and deducts the bills from the proceeds and pays the amount deducted to the captain.

With a view to settle the questions of law in the case, the judge directed the jury that the only question for their consideration was, whether the plaintiffs had pursued the orders of the owners in paying Folger, and that if they should find they had done so, the verdict should be in their favor for the amount of proceeds received by the defendant, with interest. The verdict was for the plaintiffs for 778 dollars, 54 cents, under this direction.

*Adan* for the defendant. The seamen were not to have a part of the oil, for then the proper deductions could not be made from their lays, but they were to be allowed a part of the net proceeds after the voyage should be settled. Their lays were therefore mere *choses in action*, and Folger or his assignees must have sued the ship-owners in their names. *Usher v. D'Wolfe*, 13 Mass. R. 290. It may be said that Daniel Barney accepted the orders of assignment, but it does not appear

that he was authorized to accept them, nor for whom he did it. As ship's husband he had no such authority.

In a branch of business of so peculiar a character as the whale fishery we may expect to find peculiar usages. The usage proved is reasonable and of long continuance and founded upon necessity, and it furnishes a sufficient ground for a lien upon the seamen's lays. The practice of admiralty courts and the usage of trade generally is in favor of such lien. *Gardner* v. *Ship New Jersey*, 1 Peters's Adm. Rep. 223; *Hart* v. *Littlejohn*, ibid. 121; *Noble* v. *Kennoway*, 2 Doug. 510; *Vallance* v. *Dewar*, 1 Campb. 503; *Winthrop* v. *Carleton*, 12 Mass. R. 4; Park on Ins. (7th ed.) 630.

The only point determined by the verdict is, that the plaintiffs, in settling with Folger, pursued the authority given them by the ship-owners; but it does not follow that the defendant is therefore liable to them. He was a part-owner and had an interest in the lays, and the vote of the majority in interest could not bind him in regard to the four forfeited lays or the two others, the voyage having been terminated. The plaintiffs as agents have their remedy against those only who authorized their proceedings.

The men having no interest in the oil itself, but only in the proceeds, the ship-owners might maintain trover for it, but not the plaintiffs. The defendant however had a lien for his advances even against the owners; Montague on Lien (Amer. ed.) 210, 211; *Milward* v. *Hallett*, 2 Caines's Rep. 77; *Lane* v. *Penniman*, 4 Mass. R. 92; *Gardner* v. *The New Jersey*, 1 Peters's Adm. Rep. 227; 2 Emerig. 458; Abbott, 127, 133; and the lien was not lost by the delivery of the oil to the agent for settling the voyage. *Urquhart* v. *M'Iver*, 4 Johns. R. 103; 1 Dane's Abr. 617.

There was no assignment of the lays to the plaintiffs. Paying the money on Folger's execution was not a purchase of them; and besides, it was not paid until several months after this action was brought. But if there was an assignment, it was either of a *chose in action*, and then the suit should have been in the names of the assignors, or of a specific article, and then to maintain trover the plaintiffs should have tendered the

amount of the defendant's lien ; and as trover therefore would not lie, this action in lieu of trover cannot be maintained. *Nicholson* v. *Chapman,* 2 H. Bl. 254.

*Prescott contrà.* Folger took an assignment from the seamen, which was accepted by the agent of the ship. This vested the right in Folger, and he might have taken the oil or have sued the ship-owners in his own name and recovered the seamen's earnings, making the usual deductions. A quantity of oil was set apart on account of the seamen's lays, and the ship-owners agreed that it should be delivered to Folger on certain conditions, and the plaintiffs, being authorized by the owners, promised to deliver him the oil accordingly. On this promise a judgment has been recovered against them, which they have satisfied ; and they may therefore maintain this action.

If the oil was not Folger's, there was a special property in the plaintiffs. The oil was on a wharf and in their custody ; and necessarily so, in order that they might fulfil their contract.

The question then is, whether the defendant had a lien. To constitute a lien there must be actual possession and a right of possession. But the general property in the oil was in the ship-owners, and the defendant could not say he would not deliver it to them until his advances were paid. Whitaker on Lien, 65 ; *Lickbarrow* v. *Mason,* 6 East, 27, note ; *Smith* v. *Plummer,* 1 Barn. & Ald. 575 ; *Hussey* v. *Christie,* 9 East, 426. But supposing the defendant had a lien, by putting the oil on the wharf and separating it from the rest of the cargo, his lien was lost ; and it did not revive when he got possession of it the second time, the rights of third persons having intervened.

It was not necessary to bring the action in the name of Folger. The oil was considered by him and by the plaintiffs, to be in the possession of the plaintiffs, and they became Folger's bailees. They have done nothing to give the defendant a right to resist their own or Folger's possession, and having been compelled to pay Folger, they may maintain the action in their own names.

The usage proved was unreasonable. It would be giving a master a dangerous power to allow him to supply his seamen

120

with clothing upon a pledge of their lays, as he would be tempted to take advantage of their situation

*L. Shaw* in reply.   The vote of the ship-owners is argued upon as if it meant that Folger should have the oil specifically, whereas the intention was that he should have the *lays*, that is, the shares of the net proceeds of the oil after the usual deductions.   They agree to place him in the same situation as if there had been no desertion, the situation of an owner of a *chose in action*, having a right to demand a sum of money after equitable deductions have been made.   The agreement of the plaintiffs with Folger did not mean that the lays were in the hands of themselves as a committee, but in the hands of the ship-owners.   It was held, and perhaps properly, in Folger's action against them, that they had bound themselves by the agreement, but there must have been at least a misapprehension on their part in submitting to a default, and paying the whole sum claimed, without the usual deductions for the advances made by the defendant.   If the ship-owners had a right to retain for those advances, the defendant, being a part-owner, is not liable to this action.   As to a lien by usage, it is a right derived from contract, but usage is evidence of, or makes a part of, the contract.   The usage proved is not unreasonable. It is said that the master has a dangerous power, but a master with a ship and cargo has always power to do great mischief, and it is therefore necessary to employ good men in order that the power may not be abused.   It is said that the lien, if any, has been lost ; but if the usage has established a lien, the mode of enforcing it is a very natural one.   Putting the oil into the hands of an agent for all concerned is not parting with the lien. It is necessary in all cases to unload, and the defendant acted according to the usage in putting the oil on the wharf.   Marking it with the ship's mark and afterwards taking a part of it, and indeed the defendant's conduct from beginning to end, showed that he intended to insist on being paid his advances There is nothing like a sale and delivery to Folger in the case, and he never had power to pass a title to other persons ; and if he had, there is no evidence that he did pass the property to these plaintiffs.   If they have acquired any right, it is an equita-

ble one in consequence of having paid Folger; they have no legal ground of action.

PARKER C. J.   The first question necessary to be settled in this case is, whether the plaintiffs have shown any legal title to any part of the proceeds of the oil belonging to the six seamen, so as to be able to maintain the action for the whole or such balance as may be found justly due to them.

The whole amount of the shares of the seamen was assigned for a valuable consideration, according to the custom of that trade, to Folger, which assignment was notified to the person acting as agent for the owners and assented to by him, and afterwards sufficiently ratified by the owners; so that if the oil or proceeds had remained in the hands of the owners or their agent, an action would undoubtedly have lain against him or them by Folger in his own name, according to the case of *Mowry* v. *Todd*, 12 Mass. R. 281, there being an express promise to deliver the proceeds to him; for the jury have found that the plaintiff acted under the authority of the owners in the settlement they made with Folger.   An action having been brought by Folger against the plaintiffs and judgment rendered against them, and the amount paid over as testified, the plaintiffs would undoubtedly have a right to retain, in a settlement with the owners, if the property or proceeds remained in their hands, or to have an action against the owners, if it had been paid over to them, it being in such case so much money paid to the use of the owners and at their request, as the law would imply.[1]   And it seems to me, that under the circumstances proved they would be entitled to an action for the specific oil which belonged to the seamen and was assigned to Folger, because Folger had virtually assigned it to them, by taking their accountable receipt for the proceeds, or at least they became thereby his bailees, so as to have a qualified property therein which would entitle them to an action; and if so, *assumpsit* would lie for the proceeds against any one, who having no right had sold the oil and received the proceeds in money.[1]   So that

---

[1] See 1 Chitty on Pl. (6th Amer. ed.) 383; *Hassinger* v. *Solnes*, 5 Serg. & Rawle, 4; *Packard* v. *Lienow*, 12 Mass. R. 11; *Ott* v. *Chapline*, 3 Harr. & M·Hen. 323; *Smith* v. *Sayward*, 5 Greenl. 504.

[1] See 1 Chitty on Pl. (6th Amer. ed.) 385, *et seq.*

if the defendant, captain of the vessel, has no legal right to re tain, I do not see but that the action may be well maintained against him.   This makes it necessary to consider the rights of the defendant as they arise out of the facts proved in the case.

And there seems to be no reason to doubt that he had, if not a lien on the oil in a technical form, a right to retain from the proceeds so much as would reimburse him the advances made to the seamen, according to the usage of that trade as proved to exist.   He certainly would have a right, upon com- mon principles, without any usage, to retain against the seamen themselves, if they had not assigned.   If they had shipped on wages, as is usual in other voyages, he might retain out of their wages advances made in money or clothing necessary for their comfort, and there is no reason why these shares of the oil, which they were to receive in lieu of wages, should not be sub- ject to the same deduction.

Besides, the general usage of these voyages, which of them- selves are peculiar and almost confined to Nantucket and New Bedford, is very clearly proved, there being no contradictory evidence, and by that usage the captain makes the advances and retains out of the shares of the men, as well when they are assigned, as when they remain their property ; and of this usage Folger, under whom the plaintiffs claim, must be presumed conusant, his claim resting perhaps principally on another usage of the same trade.   Nor is it an unwarrantable custom, as sug- gested by the counsel for the plaintiffs ; for nothing can be more reasonable, and indeed necessary, than that in voyages of this sort, which are prosecuted from pole to pole and through almost every climate, the wants of the seamen should be supplied, and if there were no security upon their earnings, there would be nobody to advance.

But it is said that the lien, if it ever existed, has been lost, first, by surrendering the whole of the oil to the agent of the owners, and secondly, by afterwards, when the defendant had taken possession by order of the owners, delivering it over again to the agent for sale.   But the nature and circumstances of the property and the voyage should be considered.   The men by their original contract had no right to have their pro- portion of oil and take it to themselves, but the whole was to

be sold and they were to have their share of the proceeds. It is true, that by consent of the owners, their proportion was set apart and all came into the hands of the defendant. Now his parting with it for the purpose of having it sold and converted into money, was by no means giving up his lien, for while it was in the possession of the agent his lien continued, and having received the proceeds he is accountable only for the balance, after deducting the amount of his advances. But he has no right to retain the whole, nor is he accountable to any but the plaintiffs for the balance ; not to the seamen, for they assigned their property to Folger ; not to Folger, for he has received the money and transferred by operation of law his interest to the plaintiffs ; not to the owners of the vessel, for they have already received what, by their own consent, is to be taken for their shares.

I see therefore no good reason why the plaintiffs should not recover the balance, which the defendant might have discharged himself of and saved the costs of this suit. We think the defendant has a right to retain the advances made by him to the six seamen, the proceeds of whose oil have come into his hands, not however *in solidum*, but each seaman to be responsible for his own debt, and if that can be adjusted so as to ascertain the balance, the verdict will be amended accordingly.[1]

1 See *Baxter* v. *Rodman, post,* 435.