By the Court, Cowen, J.
The declaration states a contract (which it avers was not in writing) by which the defendant, in consideration that the plaintiff at the defendant’s request would sell and deliver a bill of goods amounting to #251,64,. to the firm of G. B. & J. L. Crane, undertook that he would endorse their noté at six months for the price. The legal effect of the contract, if valid, was to bind the defendant to endorse instantly on the sale of the goods. The question is, whether this be a promise to answer for the debt or default of another, within the meaning of the statute of frauds. The consideration moved to the firm, which was the principal debtor; and if the defendant’s promise had been direct to pay the plaintiff that sum, it is not denied that it would have been of that collateral or accessorial character intended by the statute.
The cases cited of a promise to accept a bill of exchange, are not analogous. The acceptor is the principal debtor in respect to funds in his hands. He owes the money to the drawer, and the bill merely works a transfer of that fund to the payee. The acceptor engages to put himself in a position by which he will be obliged to pay his own debt. The drawer is the collateral undertaker. The cases do not say that a parol promise to accept and pay the debt of another for his accommodation, is valid. Unlike the case of an acceptor, the endorser of a note is the collateral debtor, the maker being the principal; and if this were otherwise on the nature of an endorsement, the statement in the declaration shows that the particular one in contemplation was an accommodation endorsement for G. B. & J. L. Crane. In other words, it was a promise to become their surety *485 for the debt. On fulfilling the promise by mating and paying such an endorsement, the defendant might have recovered over against them as for money paid to their use. Their assent to the defendant’s promise is perhaps to be intended; but whether so or not, the defendant finally joining them in the note implies their ultimate assent that he would take the exact position of their surety. To say then that this is not in effect a promise to answer their debt, would be a sacrifice of substance to sound. It would be devising a formulary by which, through the aid of a perjured witness, a creditor might get round and defraud the statute. He may say, “You did not promise to answer the debt due to me from A.; but only to put yourself in such a position that I could compel you to pay it.” Pray, where is the difference, except in words. According to such reasoning, unless you recite the words of the statute in your undertating,.it will not reach the case. No legislative provision would be worth any thing upon such a construction. It is, I fear, somewhat upon this narrow view that Bushell v. Beavan (1 Bingh. N. C. 103) may have been decided. There, the defendant undertook, not that himself, but that another should guaranty the debt. What was this but shouldering it himself? A perjury which would fasten him with such an engagement might be worth just as much to the creditor as one which would fabricate a direct promise. The witness, by hitting on a responsible man as the contemplated guarantor, might make the defendant’s promise in effect precisely the same as if direct. The statute was intended to prevent the effect of perjuries. Indeed, that is known to have been its primary object, which should never be out of view in giving it a construction.. It was truly asked by counsel, what is the difference between this case and that cited? I admit there is no difference in principle; but I think the case cited cannot be sustained.
We are referred to the dictum of Mr. Justice Story in D' Wolf v. Rabaud, (1 Pet. 500,) where, however, the learned judge admits he is not following the construction of the statute, but suggesting what might be the better construction were the question res nova ; viz. that where the engagement of the surety and *486 principal are simultaneous and on the same consideration, the case is not within the intent of the legislature. He admits that the authorities are against his views; and the cause went off upon the cases of Leonard v. Vredenburgh, (8 John. Rep. 29,) Bailey v. Freeman, (11 id. 221,) and Nelson v. Dubois, (13 id. 175.) The doctrine in. these cases related to simultaneous contracts in writing by principal and surety; that of the latter admitted to be collateral,, but deriving its aliment from the con- . sideration expressed in the first. On a familiar principle, they .áre both one contract, and the collateral is sustained by an implied reference to and adoption of the consideration expressed in the principal contract. The case of Jarmain v. Algar, (2 Carr. & Payne, 249,) is relied upon. There the defendant promised to execute a bail bond, if the plaintiff would not arrest another. This was in effect a promise to see that special bail should be put in. It was the duty of the principal to put in bail; and there is certainly some doubt whether the engagement was not collateral to answer for his default in not doing .this, and so within the statute. The decision was made at nisi prius, without stating any ground. The question was novel. It was, I admit, decided by a very able judge; but is open to the objection I have already mentioned, of being too literal a coristruction of the statute.. -
In Chapin v. Merrill, (4 Wend. 657,) there was a promise to indemnify the plaintiff, if he would become surety for "the debt of R. due to another; and the action was held sustainable on the ground that the promise to indemnify was not a contract collateral-to that of R., nor did the defendant’s engagement run to the creditor of R. It was, however, in effect, collateral to the implied contract of R. to indemnify the' plaintiff; and' a liberal construction of the statute might in that view be made to reach it. But the case before us is one of an engagement to the creditor who sold the goods ; and so distinguishable from Chapin v. Merrill.
The case of Chapin v. Lapham, (20 Pick. 467,) is in form like that of" Chapin v. Merrill, which was cited with approbation by Shaw, Ch. J. The point of the latter case "was not, *487 however, decided; for the original debtor being a minor, the whole credit was in effect given to the defendant. His promise was not collateral.
In Harrison v. Sawtell, (10 John. R. 242,) the promise of the defendant to indemnify the plaintiff for becoming bail in a suit against another, was made by the real party to that suit; the person alone interested to defend it. The promise was, therefore, in effect on his own account as principal. The person who was sued and obliged to give bail was the surety. Such a promise of indemnity was clearly without the statute. So, in Hassinger v. Solms, (5 Serg. & Rawle, 4,) the promise to indemnify was for becoming surety in behalf of the defendant for his own debt. I do not see that in the last case any question was made on the statute of frauds and perjuries.
I have now gone through with the cases mainly relied on by the counsel for the plaintiff, and one more which I have fallen upon. He has furnished us, in his argument, with the full strength of his case, so far as it depends either on authority or principle. But I think that neither will warrant us in giving to the statute that narrow and literal construction for which he contends, and which I admit some of the cases countenance. On the contrary, I am of opinion that the view taken of this question by Mr. Justice Woodworth in Gallager v. Brunel, (6 Cowen, 346,) is more in harmony with the intent of the statute. He there comments upon this promise to a creditor that the defendant would endorse the note of the debtor. In that case, the defendant refusing, the creditor treated the refusal as a fraud, and having sold goods on the faith of the promise, brought an action as for a deceit. This court, however, considered the action as a mere experiment for getting round the statute, holding the declaration bad on demurrer. It is said the case is not to the present point. True, it is not circumstantially so; perhaps not exactly so in principle. But in deciding it the attention of the court was almost necessarily drawn to the point. We may therefore assume that it was discussed after it had undergone consideration by all the justices. Be that as it may, however, I think the view taken is sustained by a liberal construction of the stat *488 ute. Such a construction is due to it, on the ground that it was intended to prevent fraud and perjury.
Judgment for the defendant.